## UNITED STATES v. CERTAIN LANDS IN TOWN OF STRATFORD, FAIRFIELD COUNTY, CONN., et al.

### Clv. A. No. 3254.

United States District Court
D. Connecticut.

Aug. 1, 1952.

Harry T. Dolan, Sp. Asst. to Atty. Gen., and Adrian W. Maher, U. S. Atty., New Haven, Conn., for plaintiff.

Frederick Wiggin and John Ecklund (of Wiggin & Dana), New Haven, Conn., for defendant.

SMITH, District Judge.

This condemnation action is before the Court on the plaintiff's Objection to Report

of Commission, and on defendant Hirsch's Motion for Overruling of Objections to Report of Commission and for Adoption of Report of Committee and Judgment Thereon.

The issue before the Committee was the fair market value on March 5, 1951, the date of taking, of fifty-eight acres of land in the town of Stratford, and some forty-five buildings thereon with 1,500,000 square feet of floor space, comprising the former Chance-Vought airframe plant.

The government, owner of 81% of the plant, and United Aircraft, 19% owner and former operator of the plant, had on November 1, 1950, granted an option to Hirsch and his associates to purchase the plant for $2,010,000. Hirsch had paid in cash $50,-000 on November 1, 1950, and two later payments of $17,500 each, a total of $85,-000, in accordance with the terms of his option, and had made timely tender of the balance due in cash, some $320,000, which was refused, the plaintiff having determined to take full title to the plant by condemnation.

There is no dispute but that Hirsch fully performed, and in February, 1951, upon making tender, was legally entitled to a transfer of title to the plant, subject to the national security clause. Under that clause, the government might retake the plant for defense use in emergency,— Hirsch could be required to replace the plant in 120 days in the condition it was when he acquired it,—and the government would be bound to pay just compensation for his interest taken.

The government chose not to convey to Hirsch and then invoke the national security clause to retake, instead instituting this action to condemn his interest and those of his associates as well as United Aircraft.

United Aircraft has accepted from the government the amount agreed to be paid it on the sale to Hirsch, and is taking no part in the present attack on the report of the Committee.

The Committee in this case consists of retired Chief Justice Maltbie and retired Justice Dickenson of the Supreme Court of Errors of Connecticut, and of retired Judge Baldwin of the Superior Court of Connecticut.

The Committee viewed the premises, held extensive hearings and found the fair market value of the premises on March 5, 1951 to be $3,100,000.

Unless there was prejudicial error in rulings on evidence, or in the law applied by the Committee, the finding must stand, for there was ample testimony in the record from the builder Moss and the experts Middlebrook and Morrison, taken together with the view by the Committee, to support a finding of value as great as, or greater, than that set by the Committee.

 The government claims that the Committee report shows that the amount awarded was based on loss of potential business profits. If this were borne out by the report, it would be error. The report is quite plain, however, that no such measure was used.

To be sure, the Committee's report concerns itself primarily with the Avco negotiations, and there is no doubt that they played a big part in the determination of the final award. But it would be unwarranted to ascribe to the Committee a method which is not evident either in the record or in the memorandum, and, indeed, which would necessitate an assumption on the Court's part which could only be based on speculation.

The Committee did find that Hirsch had, on January 17, 1951, entered into an agreement with Avco, an aircraft engine builder, to give Avco an option to lease the plant for $725,000 a year for two years with an option for three years additional and that Avco, on January 29, 1951, exercised its option in order to fulfill a prime contract for aircraft engines for the Air Force and a hoped-for subcontract with General Electric to manufacture major components for jet engines.

The Committee found that prospective purchasers would have assumed that the lease to Avco would be consummated, that Avco would occupy the plant at the agreed rental for two years from March 1, 1951, and would, in all probability, continue to do

so at least for the three years permitted renewal.

■ Certainly such pending lease probabilities are elements to be considered in arriving at fair market value. Weighed in conjunction with the experts' opinion of value, they tend to support the ultimate finding of the Committee.

But, the government argues, Air Force approval of the Avco lease is required by its terms, and no proof exists that it would approve. There was before the Committee, however, evidence that 50¢ a foot was a reasonable rent, and it was entitled to find that a prospective purchaser could reasonably have expected that such a lease would meet Air Force approval.

■ The government further urges that on March 5, 1951, a prospective purchaser must be held to know that a lease to Avco would be impossible because the government was about to condemn and place Avco in possession to carry out its government contracts in a government-owned, rather than rented, plant. This appears strange doctrine. Under it condemned property could never be appraised for its highest and best use, for obviously no use except that of the condemnor can be expected for it. The Committee was justified in considering that prospective purchasers on March 5, 1951, would have assumed that the Avco lease would be consummated, regardless of the fact that the condemnation itself would make this impossible. There is evidence that Hirsch's negotiations with Avco and others to obtain a tenant or tenants for the property to realize upon his investment of $85,000 for the option on the property and upon his commitment to tender the balance of approximately $400,000 in cash, if he desired to exercise the option, antedated the government's decision to repudiate the contract for sale and resort to condemnation of Hirsch's interest. We cannot hold that the Committee's consideration of the Avco lease situation was error.

The Committee admitted in evidence the conversations between Hirsch, his lawyer and associate Stieber, and representatives of the government in February, 1951. They were claimed and admitted as admissions against interest of facts concerning the fair market value of the plant condemned.

■ The government strenuously objects to these rulings on evidence, denying any authority on the part of those negotiating to make any admissions of fact binding on the government. It had been admitted, however, in response to a formal request for admissions under Rule 36 that the government representatives were authorized to participate in exploratory discussions with respect to the action proposed to be taken by the United States with respect to the property which was the subject of the agreement between the United States, United Aircraft and Hirsch.

The claimed admissions took the form of indications that Hirsch had obtained too good a bargain and that it would be embarrassing to the government agencies to allow the sale to Hirsch and his proposed lease to Avco to go through with resultant huge profits to Hirsch on a relatively small investment.

If the government representatives were authorized to make such statements, they were, of course, inconsistent with the government's claim that fair market value of the plant on March 5, 1951, should be controlled by the proof of the price offered and accepted by the buyer and sellers on November 1, 1950.

What weight should be given to such indefinite admissions on the matter of value is doubtful, based as they obviously were on only a portion of the evidence before the Committee bearing on the different elements of value. The Committee did, however, allow them in. While the value found is lower than might have been justified by such statements as that Hirsch stood to profit by three and one-half million we cannot tell how much weight, if any, the Committee gave them.

The declarations as to value, while not conclusive as to what value was, are some evidence as admissions of the principal if they were within the scope of the authority of the agents. We are not dealing here with narrative statements of agents after the event, to show any facts relating to the

468

contract of November 1, 1950. We have agents admittedly authorized to discuss in February future action to be taken with reference to the carrying out of the existing contract, and we may infer that the authority was granted in view of the government's knowledge of Hirsch's negotiations to lease the premises to Avco. A statement of the government's then view of facts bearing on value may well be held within the authority of the agents even if, as the government asserts, that authority did not go beyond exploratory discussion of the final action to be taken by the government and Hirsch on the carrying out or repudiation of the November 1, 1950 contract of sale.

We do not find, either in the ruling on the admissions or other rulings on evidence reversible error on the part of the Committee.

The result reached by the Committee will, as the government claims, provide to the defendant Hirsch enormous profits from his venture in the purchase of this large plant. It may well be that some provision for renegotiation of such contracts for purchase of government surplus properties to re-capture large short-term speculative profits, would be desirable in spite of any possible chilling effect on bidding which might ensue.

Whether Hirsch's profits are due to his better estimate of probable future effects of the Korean war on demand for plant space of the type, to the inadequacy of present disposal statutes, or to errors in judgment by the government and United Aircraft representatives, there is no avenue open to the Court to deny the defendant Hirsch the fair market value of his interest in the property at the time of the taking or to require him to return to the government any portion of the profit resulting from the condemnation of his interest.

The objections to the report of the Committee are overruled.

The motion for judgment on the report of the Committee is granted.

Judgment may be entered on the report of the Committee. Form of judgment may be submitted on notice.